JOEL T. ALBRIGHT, PLAINTIFF IN ERROR, V. JOHN. L. BROWN ET AL., DEFENDANTS IN ERROR.

1. **Sale:** LIEN: FAILURE TO PAY: REPLEVIN: VERDICT. A being possessed of a stock of goods upon which B had a lien sold the same to C for the sum of $2,470, the balance over and above the lien of B to be paid upon the delivery of the stock. There was also an arrangement between B and C, whereby C was to transfer to B certain real estate in satisfaction of his lien. C took possession of the goods without transferring the real estate to B, or paying the balance due to A, whereupon A entered and took possession of the store and goods. In an action of replevin by C against A, *Held*, That a verdict in favor of A for the value of the goods was sustained by the testimony.

2. **Instructions** set out in the opinion, *Held*, Properly given.

3. **Replevin:** INTERVENTION BY MORTGAGEE. In an action of replevin where goods were taken possession of by an alleged purchaser, and there was a lien upon the goods which the parties had failed to set up during the trial, the mortgagee will be permitted to intervene upon such terms as may be just, in order that his rights and those of the mortgagor to the goods in controversy, or their value, may be determined in the action.

ERROR to the district court for Thayer county. Tried below before MORRIS, J.

*O. H. Scott* and *A. R. Scott*, for plaintiff in error, cited: *Adams v. Nebraska City National Bank*, 4 Neb., 373. *Cline v. Libby*, 46 Wis., 129. *Hall v. Sampson*, 35 N. Y., 274.

*W. O. Hambel* and *Thomas Ryan*, for defendants in error, cited: *Sutro v. Hoile*, 2 Neb. 192. *Aultman, Miller & Co. v. Mallory*, 5 Neb., 180.

MAXWELL, J.

This is an action in replevin, brought by the plaintiff against the defendants in the district court of Thayer

county to recover the possession of a stock of goods. The answer is a general denial. On the trial of the cause the jury found a verdict in favor of the defendants, and that the value of the goods was the sum of $2,400, and judgment was rendered on the verdict.

The testimony tends to show that on or about the 17th day of February, 1886, one Ellison had a chattel mortgage or bill of sale on the defendants' stock of goods, on which it is said there was due the sum of $1,800; that on that day the plaintiff made a proposition to the defendants to purchase the stock of goods subject to the mortgage for the sum of $2,470, including the mortgage. The excess over the $1,800 was to be paid to the defendant Brown on the delivery of the stock. There was an arrangement between the plaintiff and Ellison whereby the plaintiff was to satisfy the chattel mortgage, by conveying to Ellison certain real estate. On the morning of the day of the sale the sheriff levied certain executions on the goods to the amount of $252.79, and took possession of the goods. These on the same day were released, upon Ellison and the plaintiff entering into a written agreement to pay the amount due in thirty days. This amount, on March 15th thereafter, was paid by Ellison. The testimony tends to show that there was some delay in the transfer of the deeds from the plaintiff to Ellison, and also that there was some objection made to them by the plaintiff. On the 18th of February, 1886, the plaintiff gave Brown an order on Ellison for the payment of money, without specifying any sum. Brown presented the order to Ellison, who refused to pay the same unless there was a sum specified therein. There seems to have been some delay, either by accident or design, in making payment, and Ellison had been garnished in certain actions wherein Brown was defendant, and wholly failed to pay the excess in his hands above the amount claimed in the garnishment proceedings. The defendant testifies that he never made an absolute delivery of

the goods to the plaintiff, or the key to the store in which they were situated; that the delivery was conditional upon his being paid the balance over and above the amount of the chattel mortgage, and that he has never been paid such sum, and therefore the contract is terminated. The plaintiff testifies that the delivery was absolute, and that the balance would be paid as soon as the exact amount could be ascertained; that, in fact, it had been tendered to the defendant, less the amount claimed on the garnishment proceedings, and that he had refused to receive it. The testimony also tends to show that the key of the store was delivered to a clerk of the plaintiff on the 18th of February, 1886, and that on the next day the lock on the front door of the store was changed by the plaintiff. On the 19th both the plaintiff and defendant seem to have been in the store, although but few sales seem to have been made. On Sunday night, the 21st of February, 1886, the defendant Brown unlocked the front door of the store and again took full possession, and claimed to be the owner, and in the morning refused to admit the plaintiff into the store. Nothing seems to have been done for several days, but on the 4th of March, 1886, the plaintiff instituted this action. The sole question presented is the right of the plaintiff to the goods.

Lockwood, one of the defendants, testified:

Q. Did you hear Jo. Albright say anything at any time in relation to his interest in the goods?

A. Yes; he told me Monday morning that he had no interest in it at all, that he was not out a dollar, and didn't allow to have any interest, and that he would not take hold till Ellison turned the keys over to him.

Q. What did he say about his deeds?

A. He said that he had the deeds in his possession, and the notes and mortgages, and that he was not going to turn them over till he got them.

Q. What did he say, if anything, in relation to a final settlement with Ellison?

A.   He said he wouldn't have anything to do with the stock of goods till he finally settled with Ellison.

Q.   On what day was that?

A.   That was on Monday, the day Mr. Brown took possession.

Q.   Where was that?

A.   Mr. Albright was in the store, and I was near the back door.

Q.   Did you see him after that conversation?

A.   He came around and said he didn't blame us, and that he had no interest in it, and didn't care.   He allowed to make Mr. Ellison turn the stock of goods to him.

The plaintiff virtually admits this testimony is true.   It is sought to connect the plaintiff with the chattel mortgage, or bill of sale, of Ellison on the goods in question, but the testimony fails to show that Ellison had taken possession under his chattel mortgage, or bill of sale, or that the plaintiff's title is derived from that.   Indeed, the character of the instrument is left in doubt, as it was neither introduced nor offered in evidence.   The defendant claims that he had been paying Ellison five per cent a month.   If such statement is true he may have a defense, at least in part, against the mortgage or other instrument possessed by Ellison.   But those questions do not enter into this case.

Objections are made to the instructions of the court, which were as follows:

"The property in question was the property of the defendants on the 16th day of February, A.D. 1886, and in their possession, but plaintiff claims that the defendants sold and delivered the property to him unconditionally and absolutely, or that the property was sold to one Ellison and delivered to plaintiff as a purchaser from Ellison, and that the property was unconditionally and absolutely delivered to him.   Defendants claim that there was an agreement to sell, but that there was no delivery in fact, or if there was a delivery, it was coupled with the condi-

tion that the title should not pass until the purchase price
as agreed upon was paid, and that the same was not paid,
and that they rescinded the sale and retook possession of
the property.

"The burden of proof is upon the plaintiff to sustain
the material allegations of his petition by a fair preponder-
ance of the evidence.

"It is a general rule of law that when goods are sold on
condition of payment being made, or some other condition
precedent being performed, before or on delivery, then an
absolute and unconditional delivery of the goods, without
requiring at the time of the delivery payment or perform-
ance, would be a waiver of such payment or performance
as a condition precedent, and a complete title would pass
to the purchaser, provided that at the time of such deliv-
ery it was the intent of the parties that it should be abso-
lute and unconditional delivery.    Though it is important,
it is not absolutely imperative, that the vendor declare that
he does not waive any condition of the sale at the time of
a delivery to the vendee.    The situation of the parties, the
nature of the transaction, the presumptions of honest
dealing, and like considerations may be taken into account
in determining whether any of the conditions of the sale
have been waived.

"It is a rule of law that a sale and a delivery of goods,
on condition that the property is not to vest until the pur-
chase money is paid or secured, does not pass the title to
the purchaser until the condition is performed; and the
vendor, in case the condition is not fulfilled, has a right to
re-possess himself of the goods, both as against the vendee
or one purchasing from such vendee with notice.    When
goods are delivered to the vendee the intention of the par-
ties determines the interpretation to be given to the de-
livery.

"If, after a full consideration of all the evidence before
you, you shall find that there was a delivery of the

goods in question, and that such delivery was absolute and unconditional, and was by the parties so intended, then the property vested in the plaintiff, and he should be entitled to recover.

"If, on the other hand, you should find that there was a delivery to plaintiff of the goods in question, but that such delivery was coupled with the condition that the property should not pass until the purchase price was paid, and that you further find that the purchase price as agreed upon was not paid, and that defendants repossessed themselves of the property, then, as a matter of law, I charge you that then the conditions are not complied with on the part of the purchaser; if the seller has done all he agreed to do on his part, then the seller has a right to repossess himself of the property, and such repossession is a rescinding of the sale, and defendants would be entitled to recover.

"The parties have agreed that the value of the goods in controversy is twenty-four hundred dollars.

"You are the judges of the credibility of each and every witness, and you should give the testimony of each and every witness such weight as, from all the facts and circumstances in proof before you in this case, you shall deem the same entitled to ; it is your duty, if you can, to reconcile the testimony of the witnesses, if there be any disagreement between them, but if you cannot, then you must determine from all the evidence before you which of the witnesses is entitled to the greater credit.

"In coming to any conclusion in this case you should be governed by the evidence introduced before you, and by that alone; disregard entirely any remarks by counsel not warranted by the evidence, if any such have been made.

"If you find for the defendant, his damages will be the value of the goods in this case, $2,400, and interest thereon from the date of the replevin to the first day of this term of court, at the rate of seven per cent per annum."

These instructions are based upon the testimony, and there was no error in giving the same.

The plaintiff asked certain instructions based upon the theory of a waiver of payment on delivery of the property, but as there is no evidence of such waiver, they were rightfully refused. There is no error in the record, and the judgment is affirmed.

This disposes of the questions before the court, but, as it is evident from the testimony that Ellison has a claim of some kind upon a portion or all of the goods, and as it would be unjust to require the plaintiff to pay the defendants the full value of the goods, and take them subject to Ellison's claim, therefore Ellison will be permitted to intervene in the district court upon such terms as the court may deem just, and assert his rights, as against the defendants, to such portion of the money in controversy as the court shall find he is entitled to. And for that purpose the cause is remanded to the district court.

JUDGMENT ACCORDINGLY.

THE other judges concur.