## UNITED STATES v. KINSEL.

(District Court, W. D. Washington, N. D.   December 10, 1918.)

### No. 4378.

1. INTOXICATING LIQUORS ⬳134—REGULATIONS PROHIBITING SALE OF LIQUOR WITHIN CAMP ZONES.

Under Selective Service Act, § 12 (Comp. St. § 2019a), authorizing the President to make regulations governing prohibition of "alcoholic liquors" in or near military camps, and prohibiting sale of "intoxicating or spirituous liquors" at any camp, and any "intoxicating liquors, including beer, ale, or wine," to soldiers in uniform, regulations made by the President cannot be broader than the statute, and cannot extend the scope of the prohibition beyond the articles comprehended within the terms used in the act.

2. INTOXICATING LIQUORS ⬳134—"ALCOHOLIC LIQUOR;" "INTOXICATING OR SPIRITUOUS LIQUORS;" "INTOXICATING LIQUOR INCLUDING BEER, ALE, OR WINE."

The terms "alcoholic liquors," "intoxicating or spirituous liquors," and "intoxicating liquors, including beer, ale, or wine" are used as synonymous terms in Selective Service Act, § 12 (Comp. St. § 2019a), prohibiting sale of such liquors to members of the military forces while in uniform.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alcoholic Liquor.]

3. INTOXICATING LIQUORS ⬳216—INFORMATION FOR SELLING LIQUOR NEAR CAMP.

Information charging sale of "alcoholic liquor," labeled and denominated "Newbro's Herpicide," within the prohibited zone around a military camp, *held* sufficient; whether the article sold was within the prohibition being a matter of proof.

Criminal prosecution by the United States against W. S. Kinsel.   On demurrer to information.   Overruled.

Robt. C. Saunders, U. S. Atty., of Seattle, Wash.
Ryan & Desmond, of Seattle, Wash., for defendant.

NETERER, District Judge. The defendant is charged with violating the regulation promulgated by the President, dated June 27, 1918, under section 12 of the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 82 [Comp. St. § 2019a]), by which a zone is created in which the sale of alcoholic liquors is prohibited. He is charged with selling to Thomas L. Cassidy, a private in the military forces of the United States, certain "alcoholic liquor," to wit, about one pint labeled and denominated "Newbro's Herpicide." The defendant has demurred to the information on the ground that it does not allege facts sufficient to constitute a crime.

The defendant contends that Webster's New International Dictionary, 1915, defines "herpes" as:

"Any of various and acute inflammatory affections of the skin and mucous membrane, characterized by the formation of clusters of the vesicles, which have a tendency to creep or spread from one part to another. Herpes is a generic term applied (with a qualifier indicating the form or part affected)

formerly to numerous dissimilar diseases, including eczema, lichen, psoriasis, and ringworm."

"Cide. * * * Signifying killer or destroyer, as fratricide, microbicide."

That the label set out in the information, upon the bottle, not being enumerated in the statutory definition, but is, per se, based upon the thought that it could be used as a beverage, and no specific allegations appearing that it is capable of such use, the information is fatally defective.

[1] Section 12 of the Selective Service Act provides that the President may make regulations governing the "prohibition of alcoholic liquors" in or near military camps, and to the officers and enlisted men; also prohibits the sale of "intoxicating" or "spirituous" liquors to any military station, etc., and makes it unlawful to sell intoxicating liquor, including beer, ale, or wine, "to any officer or member of the military forces while in uniform," except as provided. The regulations of the President creating certain zones, prohibit the sale within such zones of any "alcoholic liquor, including beer, ale, or wine, either alone or with any other article."

[2] The terms "alcoholic liquor," "intoxicating or spirituous liquor," "intoxicating liquor, including beer, ale, or wine," are used in section 12 as synonymous terms. The executive order penalizing the sale of "alcoholic liquors, including beer, ale, or wine, either alone or with any other article," authorized by section 12, can have no broader scope than the authority upon which it is predicated. The phrase, "either alone or with any other article," cannot extend the scope of the order beyond the enumerated articles comprehended within the prohibitive authority. Under the doctrine of ejusdem generis, this phrase, if included within the power conferred would have to be held to refer to the preceding enumerated articles. With this conclusion, the intent of Congress and of the executive order, I think, is clear.

[3] The discussion of a somewhat similar issue by Justice Brewer, while a member of the Supreme Court of Kansas, in the Intoxicating Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284, is very enlightening. The Kansas statute (Laws 1881, c. 128) read:

"All liquors mentioned in section 1 of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this act."

The scope of this act was unlimited. Limitations, as observed, are placed in section 12. Justice Brewer (25 Kan. at page 767, 37 Am. Rep. at page 293) said:

"If the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute."

Again, on the same page:

"Intoxicating liquors, or mixtures thereof. This, reasonably construed, means liquors which will intoxicate, and which are commonly used as beverages for such purposes, and also any mixtures of such liquors as, retaining their intoxicating qualities, it may fairly be presumed may be used

as a beverage and become a substitute for the ordinary intoxicating drinks. Whether any particular compound or preparation of this class is within or without the statute is a question of fact, to be established by the testimony and determined by the jury. The courts may not say as a matter of law that the presence of a certain per cent. of alcohol brings the compound within the prohibition, or that any particular ingredient does or does not destroy the intoxicating qualities of the alcohol, or prevent it from ever becoming an intoxicating beverage. Of course, the larger the per cent. of alcohol and the more potent the other ingredients, the more probably does it fall within or without the statute; but in each case the question is one of fact, and to be settled as other questions of fact."

This expression was provoked by a statute denouncing liquor or "mixtures thereof." The settled doctrine, I think, is that, when the intoxicating or alcoholic character of a beverage will be judicially noticed, special allegations are not necessary, or if the beverage falls within the statutory enumeration of classes denounced.

The information in the instant case charges the sale of "alcoholic liquor," using the express language of the statute, and that is sufficient. The label on the bottle can have no controlling force. Whether the contents of the bottle are "alcoholic liquor," or merely a compound containing alcohol, wherein the distinctive character and effect of "alcoholic liquor" are absent, is a matter of proof.

The information upon its face is sufficient. The demurrer is overruled.