ALFRED BROWN, APPELLEE, V. MARK T. HYSLOP, APPELLANT.

45 N. W. 2d 743

Filed January 26, 1951. No. 32895.

*Wear & Boland,* for appellant.

*Gaines, Shoemaker & Crawford,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The subject of this case is a claim, predicated upon an alleged implied contract, against appellant for the reasonable value of professional services performed by appellee, a physician and surgeon, for three minor children of appellant made necessary by injuries inflicted upon them by a collision of an automobile in which they were traveling and a railroad train at a grade crossing in Omaha.

The petition alleged that appellee, a physician and surgeon of Omaha, rendered medical and surgical services consisting of emergency treatment and subsequent care to three minor children of appellant after they were injured in a collision of an automobile and a train on or about August 12, 1946; that the services performed and the care and treatment furnished them were "necessaries" and were performed and furnished with the knowledge and consent of appellant; and that the reasonable value thereof was the amount stated in the prayer of the petition. The answer of appellant was a denial. Appellee had a verdict and judgment was rendered for him. Appellant was denied a new trial and he seeks relief from the judgment by this appeal.

Appellant did not at the trial test in any manner the sufficiency of the evidence to justify a verdict for his adversary, and does not on this appeal assert that the verdict is not sustained by evidence. This makes unnecessary a summary and discussion of it.

Appellant strenuously contends that the omission of the trial court to instruct the jury as to the distinction between emergency treatment and treatment after the emergency had past was prejudicial error, and that the evidence in this case limits any recovery by appellee to the amount of the reasonable compensation for emergency treatment furnished to the injured minor children.

Appellee received information by telephone from an unidentified person about mid-forenoon on Sunday, August 11, 1946, that an accident had happened and a re-

quest that he proceed at once to Clarkson Hospital. When he arrived there the first of the victims of the accident seen by him was being taken into the operating room. She was a daughter of appellant and had many serious injuries consisting of fractures, wounds, bruises, and contusions. She had a concussion, was in serious shock, unconscious, and her condition was critical. It was thought that she could not survive. Complications developed. She required immediate and continuous care and treatment. Her condition presented perplexing problems and required portentous decisions to be made. This was true while appellee was in charge as her attending physician from August 11 to August 29, at which time she was removed to another hospital. At that time it could not be told if she would live, or if she did what her physical condition would be. The other daughter and the son of appellant came to the hospital soon after appellee arrived there. The daughter had a head wound, multiple fractures, some compound, and was in a serious condition. The boy had a large lacerated wound of the right knee, bruises on the right side of his forehead, and was in moderate shock.

It is conceded that appellee performed medical and surgical services for children of appellant. He and his wife were at the Clarkson Hospital at the time the children entered it and frequently thereafter until the children were taken from it. They met appellee there, knew he had rendered and was rendering the services claimed by him for their children, and were in consultations with him and other doctors concerning the children and their care. They asked appellee to secure the assistance of other doctors and to consult with them, and he did. Among these were Dr. Bennett, a neurologist, Dr. Martin, an orthopedic surgeon, Dr. Boyne, a specialist in jaw surgery, Dr. Kelly, an X-ray specialist, and Dr. Thompson, as consultant and assistant in an operation. Appellee also consulted with Dr. Barry, family physician, and called to his assistance Dr. Best when he first got

on the case because of the emergency and the fact that he could not attend the three at once. Appellee and the parents of the children talked frequently about what was being done for them and discussed the possibilities of future developments. On one occasion the orders of appellee as to penicillin dosage had been changed. He learned that Dr. Barry, the family physician, had made the alteration in the instructions given. Appellee consulted with appellant about this. He told him someone must be in charge, and he did not like to have his orders for treatment of the patients changed without his knowledge. He asked appellant to talk with Dr. Barry so that it would not happen again, and appellant consented to do so. Appellant was told by appellee that if he was to be responsible he must be notified of any changes that were to be made in the treatment prescribed by him. Such an occurrence did not again happen. Appellant at no time communicated with appellee that his services were not wanted or that he should discontinue his care of the children. More than a month after the services of appellee were completed he received the letter of appellant in which he said "I deeply appreciate what you did when these accident victims were brought into the hospital and subsequently * * *."

This litigation was commenced more than three years after the transaction but appellant did not present any issue as to the character, quality, or result of the services rendered by appellee. Appellant knew the facts, consented to and accepted the services of appellee, and attested his appreciation of them in writing. The contention of appellant in this regard cannot be sustained.

Appellant complains that the trial court failed to instruct the jury on his theory of the case because it refused to advise the jury that appellee could not recover from appellant for the medical services involved if they were rendered in his capacity as surgeon of the Chicago & North Western Railway Company, were part of his regular duties as such surgeon, and included in the

salary he received from the railway company. The tendered instruction was that if the jury found by a preponderance of the evidence that appellee was employed by the railway company to treat the appellant's children, he could not recover against appellant. The evidence is that at the time important to this controversy appellee was engaged by the Chicago & North Western Railway Company as division surgeon for it and its subsidiary, Chicago, St. Paul, Minneapolis & Omaha Railway, on a salary to care for, when he was available, injured employees and passengers who received injury in transit on the lines of these companies. Appellee received nothing from the companies, or either of them, or from anyone for the services rendered the children of appellant. There is no evidence that anyone in any way connected with either of the companies communicated with appellee concerning the injuries to or the services rendered the victims of the accident which resulted from a collision of the auto in which they were riding and a train of the Chicago & North Western Railway Company. The trial court properly refrained from charging the jury as requested. Error may not be predicated upon the refusal of an instruction not applicable to any evidence in the case. Muller v. Jensen, 144 Neb. 1, 12 N. W. 2d 80.

Appellant argues that instructions Nos. 4 and 5 were inadequate to cover the factual situation presented by the evidence, and the theory of appellant. It is proper to note in this connection that the answer is a denial. Instruction No. 4 is that the action against appellant was upon an implied contract that he would pay appellee for the services rendered his children and such a promise could be proven by facts and circumstances, together with the words used by the parties at the time from which reasonable persons in conducting the ordinary affairs of business, but with special reference to the particular matter in hand, would be justified in inferring such a promise, and in determining whether or

not a promise should be inferred the jury had a right to take into consideration all the acts and statements of the parties with reference to the subject of the supposed contract or promise while the alleged consideration therefor was being performed and afterwards; that there was no evidence of any words used by appellant importing a direct promise to pay for such services; and that the sole question for the jury to determine, according to the rules above stated, was whether or not from the words used and the surrounding circumstances a reasonable person would be justified in believing the appellant had made a promise and agreement to pay. If so, the jury would be justified in inferring such a promise, but otherwise not.

Appellant has not specified any definite defect in this instruction. It has substantial approval by a decision of this court. Citizens State Bank v. State Bank, 111 Neb. 571, 197 N. W. 607.

Instruction No. 5 is as follows: "You are instructed that in determining the amount due the plaintiff, if anything, the law is when a person employs another to do work for him or render him service without any agreement as to his compensation, the law implies a promise from the employer to the employee that he will pay him for his services as much as he, the employee, may deserve or merit." The specific objection of appellant is that there is no evidence that he "had employed the plaintiff to do work for him or render service." This instruction is directed to the determination of the amount of compensation, if any, which appellee should receive and is not concerned with the issue as to the obligation of appellant for compensation. The argument that the instruction raised the question of the existence of a contract of employment by insinuation is without substance in view of the language of the preceding instruction that "In this case there is no evidence of any words used by the defendant * * * importing a direct promise to pay for such services." The immediately following instruc-

tion advised the jury that the burden was on the appellee to show by a preponderance of the evidence that he had an implied contract with appellant (1) to render professional services to the appellant's children; (2) that he rendered professional service to the appellant's children which was accepted by the appellant; and (3) the reasonable value of such services, and if the appellee had done this the jury should determine the amount of his recovery, but if he had failed to establish each of these requirements by a preponderance of the evidence, then the verdict of the jury should be for the appellant.

The meaning of an instruction, not the phraseology, is the important consideration, and a claim of prejudice will not be sustained when the meaning of the instruction is reasonably clear. If different instructions are given on the same subject they should be considered together, and if they fairly submit the case, it will not be reversed for indefiniteness or ambiguity in one of the instructions. In determining whether or not there was error in a sentence or clause of an instruction, it will be considered with the instruction of which it is a part and the other instructions, and the true meaning thereof will be determined not from the sentence or phrase alone but by a consideration of all that is said on the subject. Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913.

The period during which appellee rendered services for which compensation is claimed commenced on August 11, 1946, and ended on August 29, 1946. On the last date he sent a statement therefor to appellant. Appellant's letter to appellee, more than a month later, bearing date of October 7, 1946, stated: "I am acknowledging receipt of your letter of August 29, 1946, in which you enclose your bill for professional services in connection with the four persons injured in the unfortunate accident at 76th and Dodge Streets on August 11th, 1946. While I deeply appreciate what you did when these accident victims were brought into the hospital and sub-

sequently, I was rather shocked by the amount of this bill, which I believe to be quite excessive. When the patients have made further progress toward recovery, I shall avail myself of the first opportunity to discuss the matter with you." This was at least an implied ad-. mission by appellant of liability to appellee for some amount for services furnished 'by him to "the four persons injured in the unfortunate accident * * * on August 11, 1946." A finding of a jury based thereon that it was an express admission of liability would not be without evidentiary support. These statements by appellant after opportunity for knowledge of all the facts, deliberation, and mature conclusion, were in direct conflict with the denial of his answer and his testimony. A declaration by a litigant against interest relevant to a matter in issue and inconsistent with what is alleged or testified to by him is proper and generally important original evidence. O'Hare v. Peterson, 150 Neb. 151, 33 N. W. 2d 566.

The objection of appellant to the acceptance of this letter as evidence on the trial of the case is that it was "clearly an offer of compromise of the doctor bill which the defendant considered excessive." The record fails to show any basis for this contention. It is not disclosed that there had been any dispute or communication between the parties in reference to the claim. Appellee sent the statement, appellant received and retained it in silence for more than a month, and then, it may justifiably be concluded, after more than usual deliberation and consideration wrote the letter containing no denial, expressing an admission of liability, projecting his thought that the amount claimed was quite excessive, but in the same sentence proclaiming his satisfaction with the services of appellee to the accident victims, his minor children, not only at the immediate time of the emergency, but subsequently thereto. There is no showing of any of the elements of an effort to induce a compromise to avoid a contest. At the time the writing was

made there was no threat of litigation. It was in the circumstances a written recognition of an indebtedness —politely protested as excessive—owing by appellant to appellee. The letter did not offer any amount in compromise or for any purpose. An offer of compromise within the exclusionary rule is one made without regard to liability, the offerer denying or only hypothetically assuming liability for the purpose of the offer in an effort to effect a disposition of the matter. O'Hare v. Peterson, *supra;* Short v. Bollen, 130 Neb. 728, 266 N. W. 635.

The doctrine is firm that an offer of compromise is immune from use as proof in a contest over the subject of the proffered compromise. It is the intendment of the law to repel any inference which may arise from a proposition not made in either design or purpose to admit the existence of a fact but merely to secure peace and avoid the incidents of a legal contest. O'Hare v. Peterson, *supra.* But, if an admission is made because it is a fact, the evidence to prove it is competent whatever motive may have prompted the declaration. The deciding fact is whether or not the party making the admission intended to concede a fact hypothetically in order to induce and effect a settlement, or to declare the existence of a fact. An admission of an existing liability as distinguished from a mere offer to compromise without regard to the existence or non-existence of a liability is admissible although it is embraced in an offer of compromise. Esser v. Brophey, 212 Minn. 194, 3 N. W. 2d 3; Langdon v. Ahrends, 166 Iowa 636, 147 N. W. 940; Stanley v. Beaty, 148 Kan. 492, 83 P. 2d 637; Annotation, 80 A. L. R. 919; Annotation, Ann. Cas. 1918E 439; 20 Am. Jur., Evidence, § 566, p. 478; 31 C. J. S., Evidence, § 287, p. 1047. The letter of appellant was properly received in evidence.

The judgment of the district court should be, and is affirmed.

AFFIRMED.