CLARENCE E. FRANZ, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
57 N. W. 2d 139

Filed February 20, 1953.   No. 33248.

*Ginsburg & Ginsburg,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Dean G. Kratz,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Clarence E. Franz was charged with the offense of operating a motor vehicle on or about November 15, 1951, on a public highway in Dodge County while he was under the influence of intoxicating liquor. He was convicted in the justice of the peace court and from the adjudication made there he took an appeal to the district court. He was unsuccessful in a jury trial in that court, and he was adjudged to pay a fine and ordered not to operate a motor vehicle for a designated period from the date of the satisfaction of the fine. His motion for new trial was denied and this error proceeding was instituted.

The authority for the charge made against the defendant is the statutory declaration that it is unlawful for any person to operate a motor vehicle "while under the influence of *alcoholic* liquor." § 39-727, R. R. S. 1943. The complaint charges that defendant operated a motor vehicle "while under the influence of *intoxicating* liquor." The defendant timely and properly challenged the suffi-

ciency of the complaint to state an offense under the penal laws of the state and has continued his objection throughout the litigation. The argument pertinent to the suggested fatality of the deviation in the complaint from the language of the statute is that the main defense was that defendant may have been under the influence of a medicinal preparation which affected his conduct, but it was not the kind and nature forbidden by the statute; that the complaint and an instruction in agreement with it allowed the jury to speculate and find that the preparation taken by the defendant may have had an intoxicating effect and was therefore within the expression "intoxicating liquor" unjustifiably substituted for the words of the statute "alcoholic liquor"; and that the phrase intoxicating liquor is much broader and more comprehensive than the expression alcoholic liquor and it permitted a finding of guilt under facts which would not have admitted of such a conclusion under the more restrictive statutory expression.

Intoxicating liquor generally includes and means any liquor intended for use as a beverage, or capable of being so used, which contains alcohol no matter how obtained, in such a percent that it will produce some degree of intoxication when imbibed in a quantity that may practically be drunk. The distinctive characteristic of all liquors is that they contain alcohol, the basis of all intoxicating drinks; that they are capable of being consumed as a beverage; and that when so used, they will produce intoxication to some extent in the usual and common acceptation of the term. 30 Am. Jur., Intoxicating Liquors, § 6, p. 255; 48 C. J. S., Intoxicating Liquors, § 1, p. 135; 1 Woollen and Thornton, Intoxicating Liquors, § 5, p. 8; Annotation, 4 A. L. R. 1137; Coleman v. State, 112 Tex. Cr. 635, 18 S. W. 2d 162; Roberts v. State, 4 Ga. App. 207, 60 S. E. 1082; People v. Haney, 100 Cal. App. 295, 279 P. 1054; Commonwealth v. L. & N. R. R. Co., 140 Ky. 21, 130 S. W. 798; United States v. Kinsel, 263 F. 141. This is what the terms mean to people generally.

This is obviously the meaning alcoholic liquor and intoxicating liquor had to the Nebraska lawmakers. In the amendment of 1949 concerning the offense involved here the legislators used the terms interchangeably. The first section of the act contains the words "under the influence of *alcoholic liquor*." The next section refers specifically and definitely to the first section as relating to driving a motor vehicle while "under the influence of *intoxicating liquor*." (Emphasis supplied.) Laws 1949, c. 116, p. 309. The first section of the act of 1949 was amended in 1951, and the Legislature evidenced its understanding of the sameness of the meaning of the two expressions by continuing the use of identical language in the two sections. Laws 1951, c. 118, § 1, p. 528; § 39-727, R. R. S. 1943. An ordinary individual would not believe that intoxicating liquor or alcoholic liquor described or included a medicine prescribed by a doctor and taken by a patient for a known serious chronic physical defect or ailment, without regard to the alcoholic content of the medicine.

The words alcoholic liquor as used by the Legislature in the act defining the offense charged herein mean any intoxicating liquor intended to be and capable of being used as a beverage and which when so used may result in the one who indulged in it being under its influence. The Legislature was not dealing with technical and scientific distinctions between various liquors. Its concern was with the use of any kind of alcoholic beverage capable of having an intoxicating effect and dangerous result when consumed by any person in control of or operating a motor vehicle. The record does not establish that the defendant was prejudiced by the substitution and use of the words intoxicating liquor for the words alcoholic liquor.

A member of the police department of the city of Fremont saw the accused, who will be identified as defendant, about 6:30 p. m. on November 15, 1951, operating a motor vehicle on a street of the city. He disregarded a red traffic control light as he entered and passed

through an intersection. He stopped in the lane of traffic some distance from the intersection. He had been sounding the horn of his car since the policeman first saw him. When the officer went to the car defendant had opened the door of the car and was "raving and using abusive language." The officer stated he was a police officer, exhibited his badge, said he did not think the defendant was in a condition to drive his car, and asked him to "slide over." Defendant said he was a federal officer, struck the policeman in the mouth, closed the door, and drove down the street towards the north. He drove slowly in an irregular course to the right, off the pavement, then to the left near, but not across, the center line until he had gone several blocks, came to an intersection, and violated the requirement of a stop sign. He continued to travel on streets of the city and committed another traffic violation by failing to stop before entering an intersection protected by a stop sign. The policeman and a member of the Nebraska Safety Patrol overtook defendant on Clarkson Street where he had stopped his car. When they opened a door of the car defendant was abusive, called them vulgar and indecent names, and attempted to strike the patrolman. They placed him under arrest, called a police car, and took him to the police station. On the way there he talked abnormally loud, was abusive, and his language was inelegant. He had the odor of alcohol on his breath. His eyes were dilated and glassy. He was unsteady when he stood or attempted to walk. His clothes were disarranged, wet, and soiled. His speech was thick. The policeman, the captain of the Nebraska Safety Patrol, and the sergeant of the police department were each of the opinion that defendant was under the influence of intoxicating liquor when he was arrested and brought to the station. A doctor who saw, talked with, and examined him about 10:30 that night said that he had every symptom of being under the influence of intoxicating beverage; that his pupils were dilated; that his

skin was flushed; that he had the odor of alcohol on his breath; and that his conversation indicated and it was the conclusion of the witness that defendant had taken too much alcohol.

A doctor on the staff of the Veterans' Hospital at Lincoln who had known and prescribed for defendant for 8 or 9 months said that on November 15, 1951, and since long prior thereto defendant had an active stomach ulcer, and a condition which was spasm in nature known as Raynaud's disease. It was characterized by pain due to spasms of the small vessels of the extremities of his body accompanied by blotching of the skin due to diminution of the blood flow and generally more severe during cold weather; that when the disease has existed for a considerable time there is loss of sensation in and strength of the extremities of the body; and that the disease was chronic with defendant and because thereof he was unsteady. The doctor had prescribed and defendant had taken banthine, tincture of belladonna, and elixir of phenobarbital. The banthine was tablet in form. The tincture of belladonna and elixir of phenobarbital when compounded was a solution. The total mixture was about 22 percent alcohol by volume. The purpose of the use of it was to relax the central nervous system, the brain, and the spinal cord of the patient, because of the pain he suffered and because of a specific action of the belladonna on the ganglionic fibers. Phenobarbital is affiliated with Raynaud's disease. Defendant had a degree of emotional rigidity secondary to pain and other symptoms caused by the disease and the phenobarbital was directed to the central system as a sedation to quiet the patient. Belladonna has two actions, central and peripheral. One of the peripheral actions is dilation of the pupils of the eyes. Belladonna sometimes causes a person to become very active and violent, but when it does its use under ordinary circumstances is not continued. Banthine is a synthetic organic chemical which has actions similar to the belladonna group

of alkaloids. The prescription for defendant was re-filled on October 16 and 29, and November 9 and 21, 1951.

Defendant, a veteran of both world wars, had operated motor vehicles for 32 years and had not before the occur-rence here involved been accused of drunken driving. He had been for years before and on November 15, 1951, afflicted with a hemorrhaging ulcer, Berger's disease, and Raynaud's disease. He had about a 50 percent dis-ability of control of his extremities. He lost the ability to maintain normal balance about 1944 and it required 2 years in a government hospital for him to learn to walk again. In the fall of 1951 his condition became much worse. He was directed by the Veterans' Ad-ministration to be and he was in Omaha on the date here involved for a complete physical examination. Be-cause of the instructions given him he refrained from eating, drinking, or taking his medicine during the day before and the day of the examination. He had gen-erally taken the medicine prescribed every 3 hours day and night. The examination was made at the medical center and occupied from about 8 a. m. until 4:30 p. m. These things irritated and aggravated his condition, in-creased the pain in his stomach, and decreased his ability to use his arms, hands, and legs.

After the examination defendant took a banthine tab-let, two capsules of resinat, and a teaspoon of pheno-barbital. He did not consume any liquor or alcoholic beverage that day. He had been forbidden to do so at any time because of the ulcer and the hemorrhages it caused. He was told if he drank liquor of any kind a part of his stomach would have to be removed. He strictly complied with the prohibition imposed by his doctor. He left Omaha about 5 p. m. for Lincoln. He traveled on U. S. Highway No. 30, intending to go by way of Wahoo, because repairs were then being made on U. S. Highway No. 6. He was not familiar with U. S. Highway No. 30 and when he reached the place west of Omaha where there is a wide curve to the south and

another to the north he mistakenly took the latter. He had an attack and was quite ill while on the Dodge Street road, and after he made the turn his condition became much worse. He took two drinks of belladonna from the bottle he had. He did not know what quantity he drank. The next thing he remembered was that he was stopped by two men on a street in Fremont, taken from his car, and detained by them. They were in civilian clothes, did not say they were officers, and he thought he was being held up, that was why he attempted to keep them out of his car. He told the men at the police station of his physical condition, where he had been, what he had done, and that he was not intoxicated, but was very ill. He gave them his name and address, said he wanted to contact his family, and he gave them the names of two prominent citizens of Lincoln as persons of whom they could make inquiry concerning him. He did not say he was a federal officer. His car was not searched. He was put in a cell, was very ill, and had a hemorrhage. He asked for a doctor but none came until late that night. He took all of the medicine remaining in the bottle he had. When the doctor came defendant told him of his condition, that he had a hemorrhage that evening because of the ulcer, and of the medicine he had taken. The doctor said there was nothing he could do, visited a few minutes, and left.

The wife and a friend of the defendant came to the station about 12:30 a. m. He was released and returned to Lincoln with them. His wife described his physical condition and the treatment he had for it; the difficulty he had at times in walking or moving his arms; and the pain he suffered on those occasions. She or the friend of the defendant who went to Fremont with her saw nothing unusual or extraordinary in the activity, condition, appearance, or conversation of defendant. They each said he gave no indication that he was or had been under the influence of intoxicating liquor.

The only element of the offense in controversy is the fact of defendant being under the influence of intoxicating liquor while he was driving and operating a motor vehicle at the time charged. The evidence as to this was sharply conflicting. It was the right and duty of the jury to decide the issue. There was evidence to sustain its conclusion. Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349, states the rule: "The credibility of witnesses and the weight of their testimony are for the jury to determine in a criminal case, and the conclusion of the jury cannot be disturbed unless it is clearly wrong." See, also, Poppe v. State, 155 Neb. 527, 52 N. W. 2d 422; Danielson v. State, 155 Neb. 890, 54 N. W. 2d 56; Haffke v. State, 149 Neb. 83, 30 N. W. 2d 462. The evidence does not permit a conclusion that the verdict of the jury is without adequate proof to sustain it. The determination of the trial court that the evidence required a submission of the case to the jury was correct and the contention of defendant to the contrary must be denied.

Defendant proposed an instruction on the subject of circumstantial evidence. It was rejected. The charge of the court did not advise the jury of the probative value or the manner of measuring or applying this character of evidence. Prejudice is claimed because of this omission. The record exhibits direct and positive proof of matters claimed by the State to show guilt of the accused and defendant produced the same class of evidence to convince the jury of his innocence. "When the existence of any fact is attested by witnesses, as having come under the cognizance of their senses * * * the evidence of that fact is said to be direct or positive. When, on the contrary, the existence of the principal fact is only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial." Black's Law Dictionary (3d ed.), Circumstantial Evidence, p. 328. See, also, 20 Am. Jur., Evidence, § 270, p. 258. In Fisher v. State, *supra,* this

court said: "Absence of any direct, incriminatory evidence is ordinarily made the test of the obligation of the trial court to instruct as to the probative value and manner of considering circumstantial evidence in a criminal case, and, if there is direct incriminatory evidence of the principal facts essential to guilt, the failure to instruct in this regard is not error." Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588, a prosecution for manslaughter, involved the issue of whether or not the defendant was under the influence of intoxicating liquor at the time of the accident, and the competency and sufficiency of admitted evidence as proof that he was. It is stated therein: "In Howard v. State, 109 Neb. 817, 192 N. W. 505, it is said: 'The rule, as deduced from the weight of authority, is that a witness may testify, from observation, whether a person was intoxicated. Intoxication is a fact which a witness may ascertain in the same manner in which he ascertains other facts. He may give the details and then may state the ultimate fact of intoxication as derived from observation.' See, also, Rhodes v. State, 124 Neb. 147, 245 N. W. 402; Annotations, 42 A. L. R. 1506, 68 A. L. R. 1362." See, also, State v. Franklin, 242 Iowa 726, 46 N. W. 2d 710; Tuggle v. State, 152 Tex. Cr. 162, 211 S. W. 2d 756; State v. Oliver, —— N. D. ——, 49 N. W. 2d 564. An instruction on circumstantial evidence would not have been appropriate in this case.

It is said by defendant that the trial court refrained from charging the jury on either of the two theories of the defense. These were that his condition, appearance, and conduct at the time of his arrest were caused by physical defects and suffering caused by illness; that the result and indications thereof produced outward manifestations similar to that of alcoholism; that to the extent he was under the influence of anything it was a medical preparation taken on advice of a competent medical consultant for medicinal purposes; and that the medicine was not alcoholic liquor within the statute de-

claring the offense charged against defendant though one element of it was alcohol.

It is the duty of the court upon request to instruct the jury upon the theory of defendant if there is evidence to support it. Trobough v. State, 120 Neb. 453, 233 N. W. 452. However, if the jury is correctly instructed generally as to law, error cannot be based upon an omission of the court to charge as to some particular phase of the case unless a proper instruction was requested by the party complaining. Planck v. State, 151 Neb. 599, 38 N. W. 2d 790; Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868; Carleton v. State, 43 Neb. 373, 61 N. W. 699. The instruction tendered by the defendant did not satisfy this requirement. The fact that defendant had taken medicine containing some alcohol and that it "influenced the conduct and activities" of defendant would not require his acquittal. He could also have been at the same time under the influence of intoxicating liquor. The requested charge should have been in substance that if the jury after a consideration of the evidence had a reasonable doubt as to whether the condition, appearance, and conduct of defendant at the time of the arrest were caused by his physical defects or by the medicines taken by him, or by both, it should find him not guilty. Trobough v. State, *supra.*

The court by an instruction permitted the jury to apply to the case the maxim that he who speaks falsely on one point will speak falsely upon all. It was not applicable and should not have been interjected into the case. Defendant claims he was prejudiced by it because of the condition of the record. He testified that after his physical examination was completed in Omaha on the afternoon of November 15, 1951, he went to a restaurant which he thought was on Douglas or Fifteenth Street about a half block from the medical building, and had lunch consisting of a glass of milk, some white meat of chicken, and toast. He was asked what restaurant it was and he answered Valentine

Restaurant. He said it had no bar and did not serve beer or alcoholic drinks. Defendant was asked by the State on cross-examination if he had not stated at a prior hearing in the case that the name of the restaurant was the Virginia Cafe. He promptly and frankly answered "That is right, it was the Virginia Cafe." He was then asked if beer was sold there and he answered none where he could see, that he was only in the front part of the cafe. This testimony was not directly related to the issue of the case. It was at the best incidental and remote. It will ordinarily be sufficient to give a correct charge on the subject of the credibility of witnesses and disregard the maxim to which reference has been made. Knihal v. State, 150 Neb. 771, 36 N. W. 2d 109, 9 A. L. R. 2d 891. The giving of the instruction was error but it does not appear to be a prejudicial one. Errors in the trial of a criminal case to require a reversal of a conviction must be harmful to a substantial right of the defendant. Hameyer v. State, 148 Neb. 798, 29 N. W. 2d 458.

A part of an instruction given by the court—"Insofar as there may be any conflict in the evidence, it is your duty to reconcile it if you can"—is separated by the defendant from the other parts of it and the conclusion is pressed upon this court that it infringes the right of the jury freely to accept or reject testimony; that the jury has the privilege of crediting or discounting testimony as it desires; that its right of rejection may not be conditioned upon a preliminary finding that evidence is uncontradicted or irreconcilable with other testimony; and that the quoted language of the instruction imposed on the jury the duty and obligation to reconcile the evidence though it was in direct conflict.

In determining if there was error in a sentence or clause of an instruction, it will be considered with the instruction of which it is a part and all that is said in the charge on the subject. Brown v. Hyslop, 153 Neb. 669, 45 N. W. 2d 743. This additional language of the

instruction should be noted: "You are instructed that you are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. * * * Insofar as there may be any conflict in the evidence, it is your duty to reconcile it if you can; if you cannot, then to determine which is true and which is untrue, and give such weight to the testimony of any witness as in your judgment it should have under all the circumstances of the case."

This instruction did not violate the rule that in the trial of criminal cases as in civil cases the credibility of witnesses and the weight to be given their testimony is for the jury and, within its province, it has the right to reject the whole or any part of the evidence of any witness. Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880; Clark v. State, 151 Neb. 348, 37 N. W. 2d 601; Hans v. State, 147 Neb. 67, 22 N. W. 2d 385. Language very similar to that objected to by the defendant was contained in instructions given approval by this court. Driscoll v. Troughton, 22 Neb. 260, 34 N. W. 497; Albright v. Brown, 23 Neb. 136, 36 N. W. 297; Ballard v. Hansen, 33 Neb. 861, 51 N. W. 295; Hirschberg Optical Co. v. Michaelson, 1 Neb. (Unoff.) 137, 95 N. W. 461.

The judgment should be and it is affirmed.

AFFIRMED.

SIMMONS, C. J., not participating.